51 CCPA

**The CONDE NAST PUBLICATIONS, INC., Appellant,**

v.

**AMERICAN GREETINGS CORPORATION, Appellee.**

Patent Appeal No. 7194.

United States Court of Customs
and Patent Appeals.

April 9, 1964.

&—187

---

Richard W. Blum, New York City, Charles R. Allen, Jr., Washington, D. C. (Alex Friedman, New York City, of counsel), for appellant.

John W. Meyer, Cleveland, Ohio, for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board dismissing an opposition [1] filed by The Conde Nast Publications, Inc. against the application of appellee,[2] American Greetings Corporation, for registration of "VOGUE" as a trademark for greeting

cards. Appellee alleged first use as of May 29, 1959.

Opposition is based on appellant's prior use and ownership of two registrations [3] for "VOGUE" as a trademark for a magazine.

Both parties filed stipulated facts in lieu of taking testimony.

The stipulated facts show that appellant is primarily a publisher of books and magazines and it and its predecessors have published a fashion magazine under the mark "VOGUE" continuously since 1892. The magazine is distributed by subscription and through newsstands throughout the United States, Canada and many other countries. The average circulation per month ran from 345,960 in 1950 to 489,059 in 1960. The circulation revenue from 1950 to 1960, inclusive, amounted to more than $23 million. The net advertising revenue received by appellant from the sale of advertising space in its "VOGUE" magazine for the same period amounted to in excess of $66 million. Expenditures for promoting circulation and publicizing the magazine for the same period have exceeded six million dollars. The media employed by appellant include direct mailing of descriptive literature to prospective subscribers and advertisers, advertisements in trade publications, and other media commonly utilized by magazine publishers. Since 1935 appellant has been sending holiday greeting cards to recipients of gift subscriptions. From 1958 to 1960, inclusive, ninety-two thousand such greeting cards were sent out. The trademark "VOGUE" has been registered in more than thirty foreign countries and the magazine has been and is being circulated in all such countries. In addition to the publication of VOGUE in the United States, separate editions are published in England, France, Australia and the Union of South Africa.

Stipulated facts on behalf of appellee show that it is primarily concerned with

---

1. Opposition No. 39,860, dated April 4, 1960.
2. Serial No. 81,530, filed Sept. 17, 1959.
3. Registration No. 69,530, granted June 16, 1908; Registration No. 504,006, granted Nov. 16, 1948.

the production and sale of greeting cards, paper and ribbon for gift wrapping purposes, note paper, and other miscellaneous articles; that the products are sold throughout the United States and in a number of foreign countries; that for the fiscal year ending February 28, 1961, approximately 372,500,000 greeting cards were sold from which was realized an amount approximating $36 million; that continuously since June 2, 1959, appellee has and is now using in both intra and interstate commerce its "VOGUE" mark in connection with greeting cards; that since May 29, 1959, approximately 51,480,000 greeting cards identified by the trademark "VOGUE" have been produced and sold by appellee to the public or sent to its various sales outlets for sale, there being approximately 46,000 such sales outlets in the fifty states of the United States, and that since adoption of "VOGUE" as a mark for greeting cards approximately $750,000 worth of such cards have been produced by appellee. Substantially all of the greeting cards are marketed by the use of racks or stands distributed by appellee on which the cards are displayed and in which additional supplies of the cards are stored. These racks or stands are located in various public places, such as stores, particularly drug stores, airports and other places where the public gathers and where attendants can maintain the stands. The racks or stands are sometimes located next to or in close proximity to magazine stands or racks.

Appellee has stipulated of record a list of forty-eight third-party registrations for marks consisting of or comprising as the dominant feature thereof the word "VOGUE" for a wide variety of goods, and a list of six concerns located in various parts of the United States whose names comprise as a salient feature the word "VOGUE."

The board found, and we agree, that:

"It seems clear from the record that at the time applicant adopted and began to use 'VOGUE' for greeting cards, * * * said term had become exceedingly well known in the publishing field and to the purchasing public as an indication of origin for a high fashion woman's magazine originating with opposer. The question for determination here therefore is whether or not purchasers are likely to assume that 'VOGUE' greeting cards * * * are produced by or are in some way associated with the publisher of 'VOGUE' magazine."

We cannot, however, harmonize the view we take of the facts and issues here presented with the reasons given and the conclusion reached by the board that:

" * * * in view of the differences between the goods, the nature of the term 'VOGUE,' the fact that numerous third persons have adopted and registered 'VOGUE' for a variety of products including such closely related goods as glassware and china tableware, clocks and watches and watch bracelets, and hair sets and hair roll foundations, that notwithstanding that the goods of the parties may be displayed in closely positioned racks in the same outlets it is unlikely that the purchasing public would assume, merely because of the identity of the marks, that they emanate from or are in some way associated with the same source."

As recognized by the board, and as to which there can be no dispute, at the time appellee commenced its use and filed application to register the mark in issue for greeting cards, "VOGUE" magazine had long before acquired a secondary meaning in the publishing field.

While the goods of the parties here are not the same nor are they competitive, they do bear some relation to each other. The goods of both parties are in large measure dispensed to the same purchasers at the same time, at the same place and in the same manner. The self-service racks or stands are, at times, located adjacent to or in close proximity with each other in the same type of places. Purchasers desirous of purchasing "VOGUE" magazine would, in con-

nection therewith, be immediately confronted with a display of "VOGUE" greeting cards and would, in our judgment, reasonably and logically assume a connection or association of the two as to source or origin. It would not seem unusual for a purchaser to purchase magazines and select greeting cards at the same time, and especially so when every facility of attraction and convenience was concurrently afforded. It is the cumulative effect of these combined factors which strongly tend to show a natural relation between the respective goods under consideration which is ample to produce the conclusion in the minds of purchasers that they emanate from a common source when identified by and sold under the identical trademark "VOGUE."

We think that under the facts of this case the board gave undue weight to the imposing array of third-party registrations in concluding that there was no likelihood of confusion. We agree with the board that such registrations and/or usage may be considered as tending to show that a registered mark may be a "weak" mark and thus result in a narrowing of an opposer's rights therein. We do not agree, however, with the conclusion of the board that of the broad variety of diverse goods represented by the forty-eight third-party registrations, those singled out by the board such as "glassware and china tableware, clocks and watches and watch bracelets, and hair sets and hair roll foundations" are "closely related" to the goods under consideration, namely, magazines and greeting cards.

We note here, as did this court, in Price-Pfister Brass Mfg. Co. v. Milwaukee Faucets, Inc., 311 F.2d 817, 50 CCPA 898:

"Appellant has introduced into the record six third-party registrations in an effort to substantiate the position that appellee is not entitled to such rights in the word 'ADJUSTO' as to justify sustaining the opposition. All of these registrations were issued subsequent to the date of appellee's registration and no one of them contains an alleged date of first use prior to that of appellee. The goods to which such third-party registrations relate are of different descriptive properties than the goods upon which the appellant and appellee use their respective marks. Under these circumstances, they are not sufficient evidence of a lack of distinctiveness to overcome the likelihood of confusion between 'ADJUSTO' and 'ADJUSTA-FIT' when applied to the respective goods here."

In addition to the fact of the issuance of the third-party registrations subsequent to the date of appellant's registration, the goods associated with these registrations are of different descriptive properties than those to which the marks in issue relate.

As we have noted, the board found, with abundant support of record, that the term "VOGUE" had become exceedingly well known in the publishing field as an indicator of origin for the magazine originating with appellant. Such distinctiveness has not, in our judgment, been overcome by the third-party registrations.

We consider apposite to the situation here the principle stated by this court in Clinton Detergent Company v. Procter & Gamble Co., 302 F.2d 745, 49 CCPA 1146. With reference to some 63 third-party registrations of the word "joy" by itself as well as in combination with other words and designs for a wide variety of goods, the court observed that such registrations "are evidence which we consider with other pertinent evidence on the issue of alleged distinctiveness of the mark" but, that such registrations "are not conclusive evidence on this issue."

Of particular significance in its application here is the following statement of the court:

"Where, as here, the distinctive mark of the first user is adopted in its entirety as a part of the late comer's mark, such appropriation cannot be sanctioned on the basis of third party registrations. In such cases a decision can be reached only

by weighing all the evidence from which to determine likelihood of confusion, mistake or deception of purchasers arising from applicant's use of its mark on its goods. In such a weighing here, the third party registrations have not overcome the showing of distinctiveness made by opposer."

Upon consideration of the evidence disclosed by this record, we are of the opinion that appellee's use of the mark "VOGUE" as contemplated would result in likelihood of confusion, mistake or deception of purchasers. We reverse the decision of the Trademark Trial and Appeal Board.

Reversed.