**STERLING DRUG, INC., Appellant,**
v.
**M-A PHARMACEUTICAL CORPORA-
TION, Assignee of Charles A.
Susslin, Appellee.**

**Patent Appeal No. 7306.**

United States Court of Customs
and Patent Appeals.

April 22, 1965.

Worley, Chief Judge, and Martin,
J., dissented.

Ernest F. Wenderoth, Washington,
D. C. (William F. Weigel, New York City,
of counsel), for appellant.

William R. Liberman, New York City,
for appellee.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH, and AL-
MOND, Judges.

SMITH, Judge.

An application, serial No. 118,013, was
filed April 17, 1961 by appellee to register
"M-A" for a medicinal preparation in
tablet form for relief of distress or dis-
comfort associated with over indulgence
in food and/or drink.

Registration was opposed by appellant
as registrant of "M-O" for a pharma-
ceutical preparation consisting of milk of
magnesia and mineral oil. The Trade-
mark Trial and Appeal Board dismissed
the opposition (138 USPQ 651).

As pointed out by the board:

Since applicant does not dispute
opposer's priority or the similarity
between the goods of the parties,
this case turns solely upon the ques-
tion of whether or not the resem-
blances between the marks here in-
volved are such as to be likely to
cause confusion or mistake or decep-
tion. * * *

After comparison of the marks, the
board stated:

With regard to the marks, they are
of course similar to the extent that
both are comprised of two letters,
the first of which are identical.
When viewed in there [sic] entire-
ties, however, it is our opinion that
"M-O" and "M-A" differ sufficiently
in both sound and appearance to
avoid any reasonable likelihood of
their being confused in use. Cf.
Holland-Rantos Company, Inc. v.
Henry Laboratories, Inc., [195 F.2d
325, 39 CCPA 877] 93 USPQ 168
(CCPA, 1952).

The present appeal raises as its sole
issue the correctness of the above finding.

■ Appellant challenges the correctness of the finding of the board as to likelihood of confusion, basing its position chiefly on what it terms "the virtual identity of the marks 'M-A' and 'M-O', and the substantial similarity of the goods to which they are applied."

Appellee placed numerous third party registrations in the record to support its position that letter combinations including the initial letter "M" are common in the pharmaceutical field. Appellee's brief points out that all the third party registrations include the initial letter "M"; three involve various forms of the letter "M" alone; eight include the initial letter "M" in a two letter combination: "M.D." "MV" "MG" "MS" and "M-F" "MH". The remainder are three letter or number combinations, each starting with "M", and including MC-47, McK, MVM, MDD, MPL, MEO, MFC, MHS, MRT, MRX, MVI, MSM, MSD, MPR, MLV and MPO.

■ We recently had occasion to observe in Condé Nast Publications, Inc. v. American Greetings Corp., 329 F.2d 1012, 51 CCPA 1176, that third party "registrations and/or usage may be considered as tending to show that a registered mark may be a 'weak' mark and thus result in a narrowing of an opposer's rights therein."

The initial letter "M" is shown by itself to identify no particular source of goods in the fields in which appellant and appellee are using their respective marks. The only possible distinction which appellant can assert as denoting a source or origin is the use of the specific combination "M-O" on its specific goods, which consist of mineral oil and milk of magnesia in liquid form and are primarily a laxative.

Appellant argues that "the letter 'M' constitutes the first and most important part of both marks". The argument is untenable in view of the fact that in many other registrations here of record in the pharmaceutical field the letter "M" similarly constitutes "the first and most important part" of letter combination marks.

While appellee would resolve the issue here by comparison of the terminal parts of the marks and find that the letter "O" in appellant's mark is not confusingly similar to the letter "A" in appellee's mark, the decision must be predicated on a comparison of the marks in their entireties, as was done by the board. Upon such a comparison, we agree with the board that the marks "differ sufficiently in both sound and appearance to avoid any reasonable likelihood of their being confused in use."

We therefore affirm the decision of the board.

Affirmed.

WORLEY, Chief Judge (dissenting).

It seems reasonable to conclude that when marks so similar as those here are applied to substantially the same goods, sold through the same over-the-counter channels of trade to the same class of purchasers, there would be a certain likelihood of confusion in the mind of the average purchaser. At least I feel we are obliged to resolve doubt on that score in favor of the registrant and against the newcomer. United States Time Corp. v. Jacob Tennenbaum, 267 F.2d 327, 46 CCPA 895.

If the score of third party marks considered by the majority serve any purpose in this contest between "M-A" and "M-O" alone, they reflect an already present state of confusion in this particular market place. Yet we add more.

Such a result would be avoided by adhering to the sound doctrine established over thirty years ago,[1] where this court refused to consider some one hundred third party registrations, saying:

" * * * One purpose of the trademark registration law being to aid legitimate interstate and foreign commerce, it seems to us that, both in letter and spirit, it requires a

[1]. Trustees for Arch Preserver Shoe Patents v. James McCreery & Co., 49 F.2d 1068, 18 CCPA 1507 (1931).

construction which will, to the fullest extent possible, prevent confusion, not add thereto. If by inadvertence, or acting under a mistaken construction of the statute, improper registrations have heretofore been granted, such errors are not remedied by supplementing them with still another error, and a mistake of yesterday should not constitute a precedent for the law of to-day and to-morrow."

That was the settled law of this court for many years, supplying the certainty and stability so essential to litigants and the court alike.

During those years the court did not concern itself with marks belonging to strangers to the suit, restricting itself to the competing marks alone. Likelihood of confusion issues were determined, in the main, by comparing the marks in their entireties, including their sound, spelling, appearance and meaning; the nature of the goods; the channels of trade; the class of purchasers for whom the goods were intended; and by following the policy of resolving doubt against the newcomer. Old fashioned tools, perhaps, but having the virtues of certainty and consistency.

It was not until a new tool in the form of third party marks was extracted from Pandora's box[2] that uncertainty and inconsistency began replacing the status quo so long enjoyed.[3] It has never been clear to me why the court felt a real need for any new tool, particularly one which our experiments with third party registrations have proven to be of such a frail and unreliable nature.

Despite my individual views regarding relevance of stranger's marks, I have respected what I understand the majority views to be and considered them when required to do so. Candor compels me to say, however, that in no wise have they served as a *useful* aid. On the contrary, they merely muddy the water and serve as stumbling blocks, helping no one, hindering all.

Even after Pandora incautiously released all the evils from her box, fortunately there still remained Hope. So with me.

MARTIN, Judge (dissenting).

Considering the marks as a whole, I find them likely to cause confusion, mistake, or deception when used on the medicinal goods of the parties.

**2.** Shoe Corp. of America v. Juvenile Shoe Corp. of America, 266 F.2d 793, 46 CCPA 868 (1959).

**3.** See Beran, Third Party Trademarks—A Factor Against Confusion, Or Just A Confusing Factor?, 55 Trademark Rep. 1 (1965).