**UNITED STATES JAYCEES, a Missouri corporation, and California State Junior Chamber of Commerce, a California corporation, Plaintiffs,**

v.

**SAN FRANCISCO JUNIOR CHAMBER OF COMMERCE, a California corporation, and the San Francisco Junior Chamber of Commerce Charitable Foundation, a California corporation, Defendants.**

**No. C–70–2334–CBR.**

United States District Court, N. D. California.

Aug. 9, 1972.

---

John P. Sutton, Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff.

Victor B. Levit, Long & Levit, San Francisco, Cal., for defendant.

FINDINGS OF ACT, CONCLUSIONS OF LAW, AND MEMORANDUM OF DECISION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

RENFREW, District Judge.

The cross motions for summary judgment[1] filed by plaintiffs, United States Jaycees and California State Junior Chamber of Commerce, and defendant San Francisco Junior Chamber of Commerce, pursuant to Rule 56 of the Federal Rules of Civil Procedure, came on regularly for hearing before this Court on April 21, 1972, and April 26, 1972. The Court having fully examined and considered the cross motions of plaintiffs and defendant as well as all contentions of plaintiffs and defendant pertaining to these motions, all affidavits, documents, exhibits, agreed statements of fact, and memoranda and authorities cited therein, makes the following Findings of Fact and Conclusions of Law setting forth the facts and law entitling plaintiffs to summary judgment.

FINDINGS OF FACT

1. Plaintiff United States Jaycees ("National") is a Missouri corporation organized as a civic action group in 1920 and has continuously existed since then, first under the name United States Junior Chamber of Commerce and since July 19, 1965, as United States Jaycees.

2. The Junior Chamber of Commerce movement started in 1915 in St. Louis, Missouri. The first organization, the "Young Men's Progressive Civic Association," changed its name to "Junior Citizens" which became abbreviated to "J.C.'s."

3. In 1918 the Junior Citizens organization affiliated with the St. Louis Chamber of Commerce and officially became known as the Junior Chamber of Commerce.

4. In January, 1920, at a caucus held in St. Louis, Missouri, the national organization, the United States Junior Chamber of Commerce, was formed.

5. National was incorporated as the United States Junior Chamber of Commerce in the State of Missouri on August 5, 1929, and officially changed its name to United States Jaycees on July 19, 1965.

1. During oral argument the parties acknowledged that regardless of the Court's final decision on their cross motions for summary judgment, certain aspects of the instant case, extraneous to the present motions, would still be pending before the Court. These matters consisted of state plaintiff's claim for unpaid per capita dues and defendants' several counterclaims. Notwithstanding the existence of these matters still to be resolved, the parties in all of their memoranda of points and authorities and in their oral arguments have referred to their motions as "motions for summary judgment."

While such motions might be more properly designated motions for partial summary judgment, the Court has adopted the terminology of the parties in referring to the motions as motions for summary judgment. Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, further proceedings will be forthcoming for a disposition of the matters not presently before the Court.

6. National's existence has been continuous from its inception in 1920 to date.

7. At the present time National has over 6,000 affiliated chapters with more than 300,000 members.

8. California State Junior Chamber of Commerce ("State") was organized in April, 1926, chartered by National as of January 15, 1927, and has been in continuous existence since.

9. At the present time State has approximately 10,000 members in more than 250 local chapters.

10. Defendant San Francisco Junior Chamber of Commerce ("SFJCC") was originally organized as a division of the San Francisco Chamber of Commerce in October, 1927, was incorporated as a California corporation on December 9, 1948, and has been in continuous existence since 1927. Since its organization it has used the name "San Francisco Junior Chamber of Commerce" in the Bay Area and elsewhere. Since its inception defendant SFJCC has been and continues to be a civic organization in the San Francisco community and has carried out and continues to carry out many worthwhile civic projects.

11. Defendant San Francisco Junior Chamber of Commerce Charitable Foundation is a California corporation.

12. National is an integrated collective organization made up of state and local organizations, all of which are engaged in the services of "organizing and holding meetings, competitions, and other special events for young men interested in the affairs and improvement of their communities, with the purpose of fostering interest in community betterment programs at the local, state and national levels, as well as offering leadership experience to the members."

13. The Junior Chamber movement is worldwide and Junior Chamber International is a worldwide organization with representatives in many countries and cities throughout the world.

14. Defendant SFJCC affiliated with National in about 1930.

15. Defendant SFJCC affiliated with State in 1928.

16. The charter of defendant SFJCC was revoked by State on February 15, 1970.

17. The charter of defendant SFJCC was revoked by National on March 16, 1970.

18. Defendant SFJCC was an officially recognized affiliate organization of National during most of the years between 1930 and 1970.

19. There were periods of time during the years 1930 through 1970 when defendant SFJCC was not affiliated with National and during all these periods of disaffiliation defendant SFJCC continued using the name "San Francisco Junior Chamber of Commerce."

20. Defendant SFJCC chose to disaffiliate with National and State primarily because the majority of its members felt they did not receive sufficient value for the dues paid to plaintiffs, and also because of disagreement with National with respect to philosophy and public positions taken by National. The fact that the Los Angeles Junior Chamber of Commerce was not affiliated with plaintiffs was of minor consequence in the decision to withdraw.

21. Prior to disaffiliation defendant SFJCC used the word "JAYCEE" in part to identify members of National as well as to identify individuals belonging to state or local chapters, whether affiliated with plaintiffs or not.

22. The abbreviation "J.C." was used to differentiate Junior Chambers of Commerce from Senior Chambers of Commerce prior to the adoption of this abbreviation by defendant SFJCC.

23. The words "JUNIOR CHAMBER OF COMMERCE" were adopted by officially recognized affiliates of National in localities other than the Bay Area prior to the adoption of these words by defendant SFJCC.

24. Prior to disaffiliation, members of defendant SFJCC frequently held offices in State and National.

25. The State of California proclaimed the week of January 18–24, 1970, as Jaycee Week in recognition of the 50th anniversary of the United States Junior Chamber of Commerce.

26. The goals of self-improvement and civic progress are shared by defendant SFJCC and officially recognized Jaycee affiliates, as well as other civic organizations.

27. Prior to defendant SFJCC's disaffiliation from National, there was no provision of the by-laws of National or any of the other governing documents of that organization which provided that when a local chapter disaffiliated, either voluntarily or involuntarily, it could no longer continue to use the name which it used prior to its disaffiliation.

28. After defendant SFJCC disaffiliated from National, National adopted the following by-law: "Applying for affiliation with the U.S. Jaycees by local organization member and/or maintaining affiliation shall constitute a waiver of all rights to the name Jaycees and/or Junior Chamber of Commerce in the event the local organization member at any time for any reason ceases to maintain a U.S. Jaycee charter."

29. At the present time there are five local chapters including defendant SFJCC in the entire United States that continue to use the name "Junior Chamber of Commerce" after having disaffiliated from National.

30. The number of disaffiliated local chapters continuing to use the designation "Junior Chamber of Commerce" has not exceeded five since 1965.

31. The Los Angeles Junior Chamber of Commerce has not been affiliated with either State or National since July 5, 1960.

32. No attempt has been made by either State or National to stop the disaffiliated Los Angeles chapter from referring to itself as the Los Angeles Junior Chamber of Commerce.

33. At all times prior to the filing of this present action on October 29, 1970, State and National's action with respect to all local disaffiliated chapters consisted of encouraging the disaffiliated local chapter to rejoin State and National.

34. Prior to the present litigation, no legal action had been taken by either State or National attempting to restrain any disaffiliated local chapter from continuing to use the name by which it was known prior to its disaffiliation.

35. Since disaffiliation defendant SFJCC has continued to use the words "Junior Chamber" apart from the full name "San Francisco Junior Chamber of Commerce" and has continued to use the words "Jaycees" and "Jaycee" and the abbreviations "J.C.'s" and "J.C." in circulars and in its newspaper.

36. The essential civic purpose of defendant SFJCC has not been changed since its disaffiliation with State or National.

37. Since its disaffiliation from National and State, defendant SFJCC has continued to render substantially the same types of civic services under the same designations as it had before its disaffiliation.

38. Defendant SFJCC is engaged in substantially the same types of civic services as are the other member organizations of State and National.

39. Since its disaffiliation from State and National, defendant SFJCC has continued to use the designations "San Francisco Junior Chamber of Commerce," "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." in referring to itself and the services it performs.

40. National is still referred to as the "United States Junior Chamber of Commerce" and continues to receive substantial quantities of mail addressed to the United States Junior Chamber of Commerce even though National had officially changed its name to "United States Jaycees" on July 19, 1965.

41. National owns United States Trademark Registrations Nos. 746,757; 810,264; 813,205; and 813,475.

42. After the disaffiliation of defendant SFJCC from National and

State, a new authorized local chapter of National and State was organized in San Francisco with the name "San Francisco –Golden Gate Jaycees."

43. National and State, together with their affiliated local chapters and individual members, have created considerable good will and association in the public mind with the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." as the result of the long and extensive usage of these designations in connection with their civic improvement services.

44. As applied to the civic improvement services engaged in by National and State (Finding No. 12), the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." indicate to the public that these services emanate from either National, its component state organizations including State, its affiliated local chapters, or individual members acting on behalf of one of the affiliate organizations.

45. There is confusion in the public mind between defendant SFJCC and the San Francisco–Golden Gate Jaycees.

46. There is confusion in the public mind concerning the relationship between defendants and plaintiffs.

47. Defendant SFJCC refuses to delete the words "Junior Chamber" from its corporate name, but it stands ready to receive an injunction against the use of the word "Jaycees."

48. All evidence relevant to the issues herein decided is now before this Court.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter of this case and venue is proper.

2. National owns the trademarks "Junior Chamber of Commerce," "Junior Chamber," "Jaycee," and "J.C." for its services of organizing and holding meetings, competitions, and other special events for young men interested in the affairs and improvement of their communities with the purpose of fostering interest in community betterment programs at the local, state and national levels as well as offering leadership experience to the members.

3. Registration Nos. 746,757; 810,264; 813,205 and 813,475 owned by National are valid.

4. The words "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." used in connection with civic improvement and leadership training services, indicate the integrated Junior Chamber movement made up of National, State, authorized affiliates, and individual members of the movement.

5. Any rights which defendant SFJCC might have had independent of National and State to the use of the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." were merged with the rights of the plaintiff organizations upon defendant SFJCC's affiliation.

6. As applied to civic improvement services, the letters "J.C." are confusingly similar to the phonetic equivalent "Jaycee."

7. As applied to civic improvement services, the words "Junior Chamber" are confusingly similar to both the abbreviation "J.C." and its phonetic equivalent "Jaycee."

8. As applied to civic improvement services, the words "Junior Chamber of Commerce" are confusingly similar to both the abbreviation "J.C." and its phonetic equivalent "Jaycee."

9. As a result of the long and extensive usage of the words "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." by National and State, these words have come to mean in the public mind an authorized affiliate of plaintiff organizations, or National and State themselves.

10. The designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C."

have acquired a secondary meaning associated in the public mind with the activities and civic services performed by State and National and their affiliate organizations.

11. There is a likelihood of confusion in the public mind as to the relationship between defendant SFJCC and the San Francisco-Golden Gate Jaycees.

12. The use of the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." as well as the name "San Francisco Junior Chamber of Commerce" and its abbreviation in initials "SFJCC" in connection with the civic improvement services of defendant SFJCC and the use of the name "San Francisco Junior Chamber of Commerce Charitable Foundation" is likely to cause confusion in the public mind as to the affiliation of and relationship between defendants and plaintiffs.

13. National's failure to take any action to enforce its trademark and common-law rights to the exclusive use of the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycee," and "J.C." prior to filing the case at bar did not constitute either laches or acquiescence which would bar this Court from granting injunctive relief to the plaintiffs.

14. State and National's conduct in chartering the San Francisco-Golden Gate Jaycees was not in bad faith nor does it constitute cause for the application of the doctrine of "unclean hands."

15. The existence of five unaffiliated local chapters, contrasted to 6,000 affiliates, is *de minimis*.

16. State and National have no adequate remedy at law and merit injunc-tion in equity against defendants continuing to use the words "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." in connection with civic improvement services.

17. State and National are entitled to equitable protection in the form of permanent injunctive relief from defendants' trademark infringement and unfair competition.

## MEMORANDUM OF DECISION

### Introduction

The United States Jaycees ("National") and the California State Junior Chamber of Commerce ("State") brought this action against the San Francisco Junior Chamber of Commerce ("SFJCC")[2] and the San Francisco Junior Chamber of Commerce Charitable Foundation[3] for the infringement of National's trademarks registered in the United States Patent Office and for unfair competition. Jurisdiction of plaintiffs' claim of trademark infringement and unfair competition is vested in this Court under 28 U.S.C. § 1338(a) and § 1338(b).

Plaintiffs have moved this Court for summary judgment seeking to enjoin defendants from continuing to use the names, marks and designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," and "J.C.'s." Plaintiffs claim the exclusive right to the use of these names, marks and designations. Defendant SFJCC filed a cross motion for summary judgment contending that it was entitled to a judgment as a matter of law.

2. The complaint also named several individual defendants who were alleged to be officers, directors or otherwise closely associated with SFJCC and the San Francisco Junior Chamber of Commerce Charitable Foundation. On April 21, 1972, this Court granted plaintiffs' motion to dismiss the complaint and the counterclaim as to the individual defendants, leaving SFJCC and the San Francisco Junior Chamber of Commerce Charitable Foundation as the only remaining defendants.

3. Although no mention was made of defendant San Francisco Junior Chamber of Commerce Charitable Foundation in the papers filed by the parties with respect to the motion at bar, injunctive relief granted by this Court applies equally as against defendant San Francisco Junior Chamber of Commerce Charitable Foundation.

## History

The Junior Chamber of Commerce movement began rather modestly in St. Louis, Missouri, in 1915. The first organization was founded on October 13, 1915, and consisted of 32 young men interested in actively participating in public affairs. They called themselves the Young Men's Progressive Civic Association. In 1916 the name of the organization was changed to "Junior Citizens" and abbreviated "JC's." In 1918 the JC's affiliated with the St. Louis Chamber of Commerce and officially became known as the Junior Chamber of Commerce. A caucus was held in January of 1920 in St. Louis, Missouri, for the purpose of attracting other like-minded young men in other communities to join the movement and thus was born the United States Junior Chamber of Commerce.

The national organization, plagued in the early years by financial problems, got off to a rather uneven start even though the Junior Chamber movement spread rapidly across the country. While its ranks were apparently affected by the Depression and the Second World War, National today has over 6,000 affiliated chapters with more than 300,000 members. It is an integrated collective organization made up of state and local organizations, all of which are engaged in the services of "organizing and holding meetings, competitions, and other special events for young men interested in the affairs and improvement of their communities, with the purpose of fostering interest in community betterment programs at the local, state and national levels, as well as offering leadership experience to the members."

State was formed in 1926 and its charter was adopted by National in early 1927. In that same year defendant SFJCC was formed as a division of the San Francisco Chamber of Commerce. In 1928 defendant SFJCC affiliated with State but delayed affiliation with National until 1930.

Since its original organization in October, 1927, defendant SFJCC has continuously used the name "San Francisco Junior Chamber of Commerce" in the San Francisco Bay Area and elsewhere. From its inception SFJCC has been and continues to be a civic organization in the San Francisco community and has carried out and continues to carry out many worthwhile civic projects. From its ranks have come many of the outstanding leaders in the San Francisco community.

On July 19, 1965, National officially changed its name from the United States Junior Chamber of Commerce to the United States Jaycees. State has maintained its original name since its inception as has defendant SFJCC.

Disagreements developed between defendant SFJCC and State and National and came to a head in 1969. Issues arose over defendant SFJCC's voting representation on the state and national level, as well as differences concerning the use and allocation of dues paid to State and National and certain positions taken by National on public issues. These disagreements finally led to defendant SFJCC's disaffiliation from State on February 15, 1970, and its disaffiliation from National on March 16, 1970. Although there were periods of time during the years 1930 through 1970 in which defendant SFJCC was not affiliated with National, for most of the years between 1930 and 1970 defendant SFJCC was an officially recognized and active affiliate. In 1970, with the disaffiliation of defendant SFJCC as the San Francisco chapter of the plaintiffs, a new San Francisco chapter of State and National was formed called the San Francisco–Golden Gate Jaycees.

## The Propriety of Granting Summary Judgment

■■ In determining the propriety of granting summary judgment in this action pursuant to Rule 56 of the Federal Rules of Civil Procedure, this Court has given careful consideration to the well-established judicial dislike of the disposition of complex trademark infringement and unfair competition cases

through the use of summary proceedings. See, *e.g.*, Albert Dickinson Co. v. Mellos Peanut Co., 179 F.2d 265, 270 (7 Cir. 1950); Marcus Breier Sons, Inc. v. Marvlo Fabrics, Inc., 173 F.2d 29 (2 Cir. 1949); National Color Laboratories, Inc. v. Philip's Foto Co., 273 F.Supp. 1002, 1004 (S.D.N.Y. 1967). If under any reasonable construction of the facts in evidence and under any acceptable theory of law, the party opposing the issuance of summary judgment would prevail, a summary judgment cannot be sustained against him. Industrial Bldg. Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1340 (9 Cir. 1970); Consolidated Electric Co. v. United States, 355 F.2d 437, 438 (9 Cir. 1966). In determining whether summary judgment is appropriate, all doubts as to whether or not there are particular factual issues in dispute are to be resolved against the moving party. G. D. Searle & Co. v. Chas. Pfizer & Co., 231 F.2d 316, 318 (7 Cir. 1956). However, the mere existence of a disputed fact is not sufficient to defeat a motion for summary judgment; there must be a genuine issue for trial. It is well established in this Circuit that:

"the showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law. The question to be resolved is whether there is 'sufficient evidence supporting the claimed factual dispute * * * to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" (McGuire v. Columbia Broad-

casting System, Inc., 399 F.2d 902, 905 (9 Cir. 1968).)

After a careful consideration of all the pleadings, affidavits, extensive documents and exhibits, and the two comprehensive agreed statements of facts prepared by the parties, this Court finds that all of the facts relevant to the motions for summary judgment are now before the Court and are fully developed with the legal issues squarely presented. Under such circumstances the trial of the case would develop no further facts which would in any way alter this Court's decision. Textron, Inc. v. Spi-Dell Watch & Jewelry Co., 283 F.Supp. 920, 923 (S.D.N.Y.1968); *cf.* First Nat. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). There appears no issue of material fact in dispute in this case and summary judgment is proper. United States v. Gossett, 416 F.2d 565, 567 (9 Cir. 1969); Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494, 498 (2 Cir. 1962).

*National's Registered Trademarks*

Defendant SFJCC first contends that several trademarks which National had registered with the United States Patent Office have been allowed to expire. At the time of the commencement of this lawsuit, National was the owner of seven marks registered with the United States Patent Office.[4] During the pendency of this litigation, the terms of three of National's registered marks expired. National presently owns four registered and unexpired marks including one trademark, one collective membership mark, and two service marks all containing the designation "Jaycees." Furthermore, pursuant to 15 U.S.C. § 1059(a)[5] National has filed a timely

4. Registration No. 548,461, Registration No. 552,083, Registration No. 553,642, Registration No. 746,757, Registration No. 810,264, Registration No. 813,205, and Registration No. 813,475.

5. 15 U.S.C. § 1059(a) reads in pertinent part: "Each registration may be renewed for periods of twenty years from the end

of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor * * *. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein pre-

application for renewal as to one of the recently expired collective marks which incorporated the designation "The United States Junior Chamber of Commerce." These several marks which are registered with the United States Patent Office and which National owns refer to its activities in "organizing and holding meetings, competitions, and other special events for young men interested in the affairs and improvement of their communities, with the purpose of fostering interest in community betterment programs at the local, state and national levels as well as offering leadership experience to the members" (*See, e.g.,* Registration No. 810,264, United States Patent Office).

■ Even if all of National's marks and designations which had been registered with the United States Patent Office had been permitted to expire, the mere fact of expiration would not in any way be dispositive of National and State's common law claim of unfair competition. "[T]he mere registration of a trade-mark does not in itself confer any greater rights than existed at common law without registration." Griesedieck Western Brewery Co. v. Peoples Brewing Co., 149 F.2d 1019, 1022 (8 Cir. 1945). Thus, the absence of registration has been held to be immaterial to a determination of whether in fact the appropriation and use of one party's mark by another constituted unfair competition. In E. F. Prichard Co. v. Consumers Brewing Co., 136 F.2d 512 (6 Cir. 1943), the Court of Appeals for the Sixth Circuit clearly framed the issue of the relationship of the registration of a particular trademark to common law actions in unfair competition. There the Court declared,

"Registration is not controlling in a suit involving common law rights to a registered mark or in a suit for unfair competition involving its use. United States Ozone Co. et al. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881. In a suit in a federal court to enjoin wrongful use of a trade name, whether it was used in interstate commerce or registered as a trade-mark under act of Congress, is immaterial; the real question is whether the mark was actually adopted and used by the plaintiff." (136 F. 2d at 518).

*See also,* Robinson Co. v. Plastics Research and Development Corp., 264 F. Supp. 852, 860 (W.D.Ark.1967); Silvers v. Russell, 113 F.Supp. 119, 122 (S.D. Cal.1953); Developments in the Law, "Trade-Marks and Unfair Competition," 68 Harv.L.Rev. 814, 883–885 (1955). Therefore the issue here is not whether National's registered marks and designations have expired, but rather whether defendant SFJCC's continued use of the name San Francisco Junior Chamber of Commerce subsequent to its disaffiliation from National and State in referring to its organization and to the civic services which it performs constitutes unfair competition.[6]

*Defendant SFJCC's Claim of Prior Use and Primary Entitlement*

Defendant SFJCC asserts that it has been using the name San Francisco Junior Chamber of Commerce continuously for over 44 years in the San Francisco Bay Area and elsewhere. Defendant

---

scribed." In compliance with this statute, National submitted its application for renewal of its collective mark containing the designation "The United States Junior Chamber of Commerce" within three months of the date of its expiration of the period for which the registration was issued.

6. *Cf.* G. & C. Merriam Co. v. Saalfield, 198 F. 369 (6 Cir. 1912) where the Court of Appeals for the Sixth Circuit, in hold-

ing that "Webster's Dictionary" had acquired a secondary meaning, commented: "A trade-mark is a trade-mark because it is indicative of the origin of the goods. The original right to its exclusive use was not based upon any statute, but upon principles of equity; and the right is acquired, not by discovery or invention or registration, but by adoption and use. The entire substantive law of trade-marks * * * is a branch of the broader law of unfair competition." 198 F. 372.

SFJCC further asserts that it used the name *San Francisco Junior Chamber of Commerce* prior to its affiliation with either National or State. Defendant SFJCC was formed in October, 1927, as a division of the San Francisco Chamber of Commerce and affiliated with State in 1928 and with National in 1930. Defendant SFJCC concludes that its use of the name San Francisco Junior Chamber of Commerce in the San Francisco community prior to its affiliation with either State or National established its primary entitlement to the use of the name upon its disaffiliation with plaintiffs.

■ In evaluating the merits of defendant SFJCC's prior use–primary entitlement claim, it cannot be ignored that the common law of trademark infringement and unfair competition is replete with cases holding that benevolent, religious, charitable or fraternal organizations are entitled to injunctive relief protecting against the continued use of their name by local chapters which disaffiliate. *See, e. g.,* Purcell v. Summers, 145 F.2d 979, 984–985 (4 Cir. 1944); Grand Lodge, etc. v. Eureka Lodge No. 5, etc., 114 F.2d 46, 48 (4 Cir. 1940), *cert. denied,* 311 U.S. 709, 61 S.Ct. 319, 85 L.Ed. 461 (1940); Talbot v. Independent Order of Owls, 220 F. 660, 661 (8 Cir. 1915); Order of Owls v. Owls Club of McKees Rocks, 99 F.Supp. 555, 560 (W.D.Pa.1951); National Board of YWCA v. YWCA of Charleston, 173 U. S.P.Q. 307, 311 (D.S.C.1971). Grand Lodge, etc. v. Eureka Lodge No. 5, etc., *supra,* involved facts quite similar to those involved here. There, the plaintiff organization, the Order of Elks of the World, sought to enjoin defendant, a seceding local chapter, from continuing to use the designation "Elks" in its name. There, as here, the disaffiliated local chapter contended that it was entitled to continue using the name of the parent order from which it had seceded. In rejecting this contention, Judge Parker speaking for the Fourth Circuit Court of Appeals stated:

"Such use by seceding members, over whom the order has no further control, has obviously every element of unfairness that would arise from use by strangers. To say that the defendants are 'Elks' and, therefore, have the right to use the word 'Elks' in the name of their organization is to beg the question. * * * Upon separation from the order, their use of the name applicable to members of the order amounts to a fraud upon the order and upon the public and should be enjoined." (114 F.2d at 48.)

■ As in the instant case, in *Grand Lodge* the seceding local chapter argued that its separate existence prior to its affiliation with the collective parent fraternal order established the seceding chapter's entitlement to the continued use of the "Elks" name subsequent to its disaffiliation. Judge Parker dismissed this contention stating:

"Any separate existence which [the seceding local chapter] may have had prior to 1899 [the year of defendant's affiliation with the plaintiff collective order] was merged with that of plaintiff on acceptance of the charter." (114 F.2d at 48.)

National Board of YWCA v. YWCA of Charleston, 173 U.S.P.Q. 307 (D.S.C. 1971) is a recent trademark infringement case which concerned a factual situation closely analogous to the instant case. In that case the plaintiff national organization sought to enjoin the local YWCA chapter in Charleston, South Carolina, which had seceded from the national organization, from continuing to use the name "Young Women's Christian Association" and the letters "YWCA" designating that organization. The Charleston YWCA was organized in 1903, three years prior to the formation of the plaintiff national organization. The local chapter became affiliated with the national YWCA organization upon the latter's formation in 1906. As in the instant case, the defendant seceding local chapter contended that its prior independent existence and its prior use of

the name "Young Women's Christian Association" and the letters "YWCA" entitled it to continue using that name subsequent to its disaffiliation. In holding for the plaintiff national organization, the Court stated:

"With respect to defendant's alleged independent use of the name 'Young Women's Christian Association,' this Court is not convinced that the defendant ever acquired any primary right to the use of the name or the letters. * * *

* * * [A]ny separate existence that the Charleston YWCA might have had prior to plaintiff's formation in 1906, was merged with that of the plaintiff when the Charleston YWCA became a charter member of the national association." (173 U.S.P.Q. at 312.)

Similarly, in the case at bar, notwithstanding the fact that defendant SFJCC was organized approximately one year prior to its affiliation with State and three years prior to its affiliation with National, any separate existence defendant SFJCC might have had prior to its affiliation with plaintiffs was merged with plaintiff organizations upon SFJCC's affiliation with and charter membership in these organizations.

### Defendant SFJCC's Claim of Laches and Acquiescence

■ Defendant SFJCC's next contention is that plaintiff's failure to initiate legal action against defendant SFJCC during prior periods in which defendant SFJCC had temporarily disaffiliated and continued using its name, constituted laches and acquiescence estopping plaintiffs from obtaining injunctive relief.[7]

Such equitable defenses have not been favored by the courts where injunctive relief has been sought in cases of clear trademark infringement. In the often cited case of McLean v. Fleming, 96 U.S. 245, 253, 24 L.Ed. 828 (1877), the Supreme Court summarized this judicial disinclination towards such defenses:

"Equity courts will not, in general, refuse an injunction on account of delay in seeking relief, where the proof of infringement is clear, even though the delay may be such as to preclude the party from any right to an account for past profits."

In Menendez v. Holt, 128 U.S. 514, 9 S. Ct. 143, 32 L.Ed. 526 (1888) the Supreme Court reaffirmed this general proposition. In *Menendez* plaintiff sought injunctive relief to restrain defendants from using plaintiff's trademark on flour. Defendants had been using plaintiff's trademark for thirteen years without objection by plaintiff. In finding that this 13-year delay did not defeat plaintiff's claim for injunctive relief, Mr. Chief Justice Fuller declared:

"Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself. * * * Where consent by the owner to the use of his trademark by another is to be inferred from his knowledge and silence merely, 'it lasts no longer than the silence from which it springs; it is, in reali-

---

7. Callman's comments on the defense of laches and acquiescence in trademark infringement and unfair competition cases are instructive:

"Laches refers to any negligent or inexcusable delay in protecting one's rights. It is not the equivalent of abandonment, for negligence is unintentional and abandonment presupposes intent. Estoppel may be invoked against the party who fails to institute timely action, if, in reliance thereon, another has acted to his detriment. Laches and acquiescence are, therefore, mutually exclusive. Acquiescence is predicated upon an intentional abandonment and, although inaction or negligent delay may lead another to assume acquiescence on the part of the trademark owner, the fact is that the resulting 'abandonment' was not intended". 3 Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 79.1 at 515 (3d Ed. 1970).

ty, no more than a revocable license'." (128 U.S. 523–524, 9 S.Ct. 145).

The Court of Appeals for this Circuit has consistently applied the principles espoused in *McLean, supra,* and *Menendez, supra,* to trademark infringement and unfair competition cases arising in this circuit. See, *e.g.*; Safeway Stores v. Dunnell, 172 F.2d 649, 656 (9 Cir. 1949); Stork Restaurant v. Sahati, 166 F.2d 348, 362–363 (9 Cir. 1948); California Packing Corporation v. Sun-Maid Raisin Growers, 81 F.2d 674, 680 (9 Cir. 1936).

■ Plaintiffs' delay in the instant case in seeking to enforce their common law trademark rights was considerably less than the thirteen years' delay by plaintiffs in *Menendez.* Indeed, although there were periods during the 40-year span of defendant SFJCC's affiliation with National in which SFJCC disaffiliated from National and continued to use the name San Francisco Junior Chamber of Commerce, these periods of disaffiliation were typically short-lived. Furthermore, plaintiffs commenced this action within only a few months of defendant SFJCC's most recent disaffiliation. It is arguable whether such action by plaintiffs could even be construed as "delay." *Cf.* G. D. Searle & Company v. MDX Purity Pharmacies, Inc., 275 F.Supp. 524, 532–533 (C.D.Cal.1967). However, whatever term is used to describe plaintiffs' actions, plaintiffs' failure to object to defendant SFJCC's continued use of its name following its disaffiliation was not for "such an unreasonable time that equity will no longer give heed to its request for action." (California Packing Corporation v. Sun-Maid Raisin Growers, 81 F.2d at 679.)

*The Existence of Other Infringers*

■ Related to defendant SFJCC's claim of laches and acquiescence is its contention that because plaintiffs failed to initiate legal action against other local chapters who upon disaffiliation continued in the use of their name, plaintiffs are estopped from obtaining injunctive relief in this action. Callman suggests that this is no defense where the defendant has engaged in unfair competition:

"In principle, the defendant cannot avail himself of the defense that other competitors are engaging in the very same acts of unfair competition of which he has been accused, and he cannot invoke the doctrine of estoppel on the ground that the plaintiff has knowingly permitted the use and registration of the disputed mark by third parties not in privity with defendant." (4 Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 87.3(e) at 152 (3d Ed. 1970).)

■ Numerous cases have rejected this defense, holding that the existence of infringers other than the defendant was irrelevant to a determination of whether the defendant should be enjoined from continuing in its infringement of plaintiffs' trademarks and in its unfair competition. *See, e.g.,* Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 614 (7 Cir. 1965); National Lead Company v. Wolfe, 223 F.2d 195, 204 (9 Cir. 1955); Del Monte Special Food Co. v. California Packing Corporation, 34 F.2d 774, 777 (9 Cir. 1929); James Burrough Ltd. v. Lesher, 309 F. Supp. 1154, 1160 (S.D.Ind.1969). That there are other "Junior Chambers" who have disaffiliated from National and State and against whom plaintiffs have not instituted legal proceedings[8] is irrel-

8. At the present time there are five local chapters including defendant SFJCC in the entire United States that have continued to refer to themselves as "Junior Chamber of Commerce" without being affiliated with National. The number of disaffiliated local chapters which have con-

tinued to use the designation "Junior Chamber of Commerce" has not exceeded five since 1965. That the common law of trademark infringement and unfair competition has consistently held the existence of other infringers irrelevant to a consideration of plaintiff's action against a

evant to this Court's consideration of whether injunctive relief should issue.

## Unclean Hands

Defendant SFJCC also contends that because plaintiffs chartered a new local San Francisco chapter, the San Francisco-Golden Gate Jaycees, while this litigation was pending, they are barred from obtaining equitable relief because they have come to this Court with unclean hands. Defendant asserts that by the timing of this act, plaintiffs sought to confuse and mislead the public as to the new chapter's connection with the disaffiliate defendant.

It is a well-established principle of law that one seeking equitable relief must not come to the court with unclean hands. Precision Co. v. Automotive Co., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). What constitutes "unclean hands" barring a court from granting equitable relief is a determination which is within the discretion of the trial judge. Washington Capitols Basketball Club, Inc. v. Barry, 419 F.2d 472, 478 (9 Cir. 1969). As Mr. Justice Holmes cautioned in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 145, 41 S.Ct. 113, 65 L.Ed. 189 (1920), the defense of unclean hands in trademark infringement cases must be "scrutinized with a critical eye." In exercising its discretion,

> "[t]he court must weigh the substance of the right asserted by plaintiff against the transgression which, it is contended, serves to foreclose that right. The relative extent of each party's wrong upon the other and upon the public should be taken into account, and an equitable balance struck." (Republic Molding Corporation v. B. W. Photo Utilities, 319 F.2d 347, 350 (9 Cir. 1963).)

This Court has given every consideration to defendant SFJCC's contention that plaintiffs acted in bad faith in chartering another local chapter during the pendency of this litigation. However, a careful review of the facts fails to reveal that plaintiffs' actions were either in bad faith or unreasonable. With defendant SFJCC having disaffiliated from plaintiffs, they were without an affiliate chapter based in San Francisco. Within a few months after defendant SFJCC's disaffiliation, plaintiffs commenced the instant litigation. Shortly thereafter they chartered a new San Francisco chapter to fill the void left by defendant SFJCC's secession. Such action by plaintiffs, entirely consistent with their civic purposes and pursuits, was neither inequitable, unreasonable, nor in bad faith, and did not constitute unclean hands precluding this Court from granting equitable relief. Republic Molding Corporation v. B. W. Photo Utilities, 319 F.2d 347, 349–350 (9 Cir. 1963); cf. National Board of YWCA v. YWCA of Charleston, 173 U.S.P.Q. 307, 314–315 (D.S.C.1971).

## Secondary Meaning

Defendant SFJCC's final contention is that the designations "Junior Chamber of Commerce," "Junior Chamber," and "J.C.'s" are "descriptive," "generic," and "geographic" and each of the words or abbreviations in these designations are "in common usage." Defendant asserts that because of the descriptive, generic, geographic and common qualities associated with these words, no secondary meaning has attached to these designations.

In the leading case of G. & C. Merriam Co. v. Saalfield, 198 F. 369 (6 Cir. 1912), Judge Denison, speaking for the Court of Appeals for the Sixth Circuit, held that "Webster's Dictionary" had obtained a secondary meaning "in the minds of the dictionary public." In

---

particular infringer is sufficient to dispose of defendant's equitable defense. Moreover, the existence of only five other disaffiliated chapters continuing to use

the name "Junior Chamber of Commerce" contrasted to the 6,000 chapters affiliated with National underscores the *de minimis* aspects of defendant's estoppel defense.

reaching this result he defined secondary meaning thusly:

"There is nothing abstruse or complicated about this [secondary meaning] theory, however difficult its application may sometimes be. It contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trade-mark. So it was said that the word had come to have a secondary meaning, although this phrase, 'secondary meaning,' seems not happily chosen, because, in the limited field, this new meaning is primary rather than secondary; that is to say, it is, in that field, the natural meaning." (198 F. at 373).

The doctrine that geographic or descriptive terms can acquire a secondary meaning is well established. In Little Tavern Shops v. Davis, 116 F.2d 903, 905 (4 Cir. 1941), the District Court denied injunctive relief because the words "Little Tavern" were "common" and "descriptive" terms. Upon appeal the Court of Appeals for the Fourth Circuit reversed and commented that:

"When, by association with a business, a trade name has acquired a special significance as the name thereof, it will be protected by the courts even though it may have been a descriptive term in its original meaning." (116 F.2d at 905.)

Similarly, in North American Air. Sys. v. North American Aviation, 231 F.2d 205, 210 (9 Cir. 1955) the Court of Appeals for this Circuit, although acknowledging the difficulty of a "geographic term" acquiring a "proprietary connotation," held that the use of the term "North American," although geographic in origin, had acquired a distinctive secondary meaning in the aviation industry.

Furthermore, that a term has become so familiar as to be "dedicated to the public" does not preclude the possibility of that term acquiring a secondary meaning. In Brooks Bros. v. Brooks Clothing of California, 60 F.Supp. 442, 452–453 (S.D.Cal.1945), affirmed, 158 F.2d 798 (9 Cir. 1947), cert. denied, 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840 (1947), Judge Yankwich likened Brooks Brothers Clothing to the designations "Singer" and "cellophane" in its common usage and familiarity to the public. He concluded that notwithstanding the fact that the designation "Brooks Brothers" had become so familiar as to be termed generic, the designation had acquired a secondary meaning and that a condition had been created where " 'confusion of source' [was] inherent in the use of the word 'Brooks' by anyone but the plaintiff." (60 F.Supp. at 453).

More recently in National Board of YWCA v. YWCA of Charleston, 173 U.S.P.Q. 307 (D.S.C.1971), Judge Blatt responded to a contention of the defendant, the seceding Charleston YWCA, which was almost identical to defendant SFJCC's contention in the case at bar. The disaffiliated defendant argued that the name "Young Women's Christian Association" had not acquired a secondary meaning. Judge Blatt concluded:

"Because of its long continued use in connection with the activities of the plaintiff and its predecessor associations, the name 'Young Women's Christian Association' has acquired a secondary meaning as denoting the plaintiff and its affiliate members. Having acquired this secondary meaning, the name is entitled to protection, whether or not it could once have been said to be merely descriptive." (173 U.S.P.Q. at 313).

The common law of trademark infringement clearly demonstrates that generic, descriptive and geographic designations can acquire a secondary meaning.

In determining whether the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." have acquired a secondary meaning, this Court has considered (1) the length and manner of plaintiffs' use of the designations in question, (2) the efforts taken by plaintiffs toward promoting a conscious connection between the designations and plaintiffs' civic improvement services, and (3) the good will which has been developed by plaintiffs associated with the use of these designations. See, Time, Inc. v. Life Television Corp., 123 F. Supp. 470, 474 (D.Minn.1954). After a careful review of all of the evidence, this Court has found that plaintiffs, together with their affiliated local chapters and individual members, have created considerable good will and association in the public mind with the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," and "J.C.'s" as the result of the long and extensive usage of these designations in connection with the plaintiffs' civic improvement services. Furthermore, this Court has found that as applied to these civic improvement services, the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," and "J.C.'s" indicate to the public that the civic services associated with these designations emanate from either National, its component state organizations including State, its affiliated local chapters, or individual members acting on behalf of one of the affiliate organizations. In the words of Judge Blatt in the *YWCA* case,

> "[W]hatever secondary meaning that has attached springs not from the words themselves but from an identification of those words with a history of services provided. Therefore, to assert that these words in commune are *incapable* of ever acquiring secondary meaning is to ignore the clear import and definition of secondary meaning itself" (173 U.S.P.Q. at 313).

In its more than four decades of community service and civic contribution, plaintiffs have established a secondary meaning and association in the public mind with the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," and "J.C.'s" as to which they are entitled to equitable protection.

*Likelihood of Confusion*

Having found that a secondary meaning has become associated with the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s" and "J.C.," the Court must next consider whether defendant SFJCC's continued use of these designations after its disaffiliation from National and State has created a likelihood of confusion in the public mind as to the relationship between defendant SFJCC and plaintiffs. *See,* American Foundries v. Robertson, 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317 (1926); McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828 (1877); Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149, 159 (9 Cir. 1963).

There are several critical and undisputed facts which bear directly on the "likelihood of confusion" issue. Since its disaffiliation from plaintiffs, defendant SFJCC has continued to perform essentially the same types of civic services as it had prior to its disaffiliation. These civic services are substantially the same types of activities in which the member organizations of plaintiffs typically engage. Since its disaffiliation, defendant SFJCC has continued to use the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." in referring to itself and to the services it performs.

Defendant SFJCC contends that notwithstanding the fact that there was no significant change in its civic activities and in the designations it used in referring to these activities subsequent to its disaffiliation, the use of the prefix "San Francisco" should sufficiently distinguish the San Francisco Junior Chamber of Commerce from National and State and their local affiliates. Re-

sponding to a similar contention in the *YWCA* case, Judge Blatt noted:

"Defendant advances the argument that simply by prefacing 'YWCA' with 'Charleston,' this will obviate any potential confusion. This Court feels that the above argument is posited on the erroneous belief that the secondary meaning which the 'Young Women's Christian Association' enjoys in Charleston is a product of the services provided by the local affiliate and has little or nothing to do with association with the National Board. Such a parochial attitude is understandable; the Charleston YWCA has certainly earned the good reputation it enjoys in this community. However, if a member of the Tulsa, Oklahoma, YWCA should transfer membership to the Charleston YWCA, she would expect the policies and standards of the local YWCA to be the same as those of her Tulsa Chapter. In addition, the services provided by each, while they might not be exactly the same, should at least parallel one another. This is the strength of the collective association—it is no more than the sum of its parts. Therefore, with disaffiliation, the National Board's control over at least the policies and standards of the local YWCA would cease, and one visiting or transferring to the Charleston organization would certainly be confused as to which YWCA—the defendant's organization or the plaintiff's affiliate in Charleston—adhered to the same policies and standards as her home affiliate in Tulsa. Confusion does not have to be proven apodictically; a likelihood of confusion will suffice." (173 U.S.P.Q. at 313).

What is significant in the instant case is that there has been *no* change in either the name or the designations used by the defendant SFJCC after its disaffiliation with plaintiffs. Prior to its disaffiliation the defendant SFJCC referred to its organization as the "San Francisco Junior Chamber of Commerce" (abbreviated "SFJCC"). After disaffiliation defendant continued to use the name "San Francisco Junior Chamber of Commerce" and the letters "SFJCC." Prior to disaffiliation, defendant SFJCC used the designations "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s" and "J.C." in referring to the civic services which it performed. After disaffiliation the same designations were used. Preceding such designations with the geographical prefix "San Francisco" does not "obviate any potential confusion"; rather it is a significant source of such confusion.

Furthermore, after the disaffiliation of defendant SFJCC, plaintiffs, in an attempt to establish a new San Francisco based affiliate chapter, authorized and chartered a new local chapter, The San Francisco-Golden Gate Jaycees as an official affiliate of State and National. The parties have stipulated and "agreed upon as true and established as if under the provisions of Rule 36 [Federal Rules of Civil Procedure]" in their First Agreed Statement of Facts that "[t]here is confusion in the public mind between the San Francisco Junior Chamber of Commerce and the San Francisco-Golden Gate Jaycees" (First Agreed Statement of Facts, No. 120). Although the likelihood of confusion can be established without any evidence of actual confusion, evidence of actual confusion is extremely significant to a determination of the likelihood of confusion. Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 611–612 (7 Cir. 1965); David Sherman Corporation v. Heublein, Inc., 340 F.2d 377, 380–381 (8 Cir. 1965); Plough, Inc. v. Kreis Laboratories, 314 F.2d 635, 639 (9 Cir. 1963).

There appears to be a division in the Federal courts as to whether the issue of likelihood of confusion should be viewed as a question of law or a question of fact. Some courts hold that the ultimate determination of the likelihood of confusion is a question of fact. *See, e.g.,* Albert Dickinson Co. v. Mellos Peanut Co., 179 F.2d 265, 269 (7 Cir.

1950); Coca-Cola Co. v. Snow Crest Beverages, 162 F.2d 280, 283 (1 Cir. 1947); Skinner Mfg. Co. v. Kellogg Sales Co., 143' F.2d 895, 899 (8 Cir. 1944). Other courts view the determination of the likelihood of confusion as a question of law, subject to the independent review of an appellate court. *See, e. g.,* Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149, 152 (9 Cir. 1963); Sears, Roebuck and Co. v. Johnson, 219 F.2d 590, 591 (3 Cir. 1955); McCormick & Co. v. B. Manischewitz Co., 206 F.2d 744, 746 (6 Cir. 1953). The rule of this Circuit is that the question of the likelihood of confusion "partakes more of the character of a conclusion of law than of a finding of fact" (Continente v. Continente, 378 F. 2d 279, 281 (9 Cir. 1967).

 Regardless of whether the determination of the likelihood of confusion is characterized as a question of law or of fact, where there is no genuine issue as to any material fact concerning the existence of a likelihood of confusion, this Court has clear authority to grant summary judgment. Rule 56, Federal Rules of Civil Procedure; *see also,* Beef/Eater Restaurants, Inc. v. James Burrough Limited, 398 F.2d 637, 639-640 (5 Cir. 1968); Vitarroz Corporation v. River Brand Rice Mills, Inc., 266 F.Supp. 981, 983 (S.D.N.Y.1967). Where, as here, the defendant SFJCC, upon its disaffiliation from State and National, continues using the same name and continues performing the same services as it had prior to disaffiliation, and where the designations used by the disaffiliate defendant in referring to itself and to its civic services have acquired a secondary meaning associated in the public mind with plaintiffs, and where the parties have agreed that there is actual confusion in the public mind as to the relationship between the disaffiliate defendant and the new San Francisco affiliate of the plaintiffs, there is the requisite likelihood of confusion and summary judgment is appropriate as a matter of law. Beef/Eater Restaurants, Inc. v. James Burrough Limited, 398 F.

2d 637, 639-640 (5 Cir. 1968); Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494, 498 (2 Cir. 1962).

*Injunctive Relief*

Defendants have infringed State and National's common law trademark rights and plaintiffs having no adequate remedy at law are entitled to equitable protection in the form of permanent injunctive relief from such trademark infringement and unfair competition. McLean v. Fleming, 96 U.S. 245, 253-255, 24 L.Ed. 828 (1877); Audio Fidelity, Inc. v. High Fidelity Recordings, Inc., 283 F.2d 551, 558 (9 Cir. 1960); G. D. Searle & Company v. MDX Purity Pharmacies, Inc., 275 F.Supp. 524, 533 (C.D.Cal.1967).

In fashioning such equitable relief, this Court is aware of the flexibility and adaptability in balancing considerations of fairness inherent in the exercise of equity power. Hecht Co. v. Bowles, 321 U.S. 321, 329-330, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Appreciating the potential hardship which will be imposed upon the defendants if injunctive relief is to take immediate effect, the execution of this permanent injunction as to the use of the names and designations "San Francisco Junior Chamber of Commerce," "SFJCC," "Junior Chamber of Commerce," "Junior Chamber," "Jaycees," "Jaycee," "J.C.'s," and "J.C." is temporarily stayed until January 1, 1973. The execution of this permanent injunction as to representations or assertions of defendants that they are affiliated with either State or National is to take immediate effect.

In accordance with this decision, IT IS HEREBY ORDERED that effective January 1, 1973, defendant San Francisco Junior Chamber of Commerce and defendant San Francisco Junior Chamber of Commerce Charitable Foundation and each of them is permanently enjoined from continuing to use:

1. The name or designation, "San Francisco Junior Chamber of Commerce,"

2. The abbreviation of that name, "SFJCC,"

3. The designation "Junior Chamber of Commerce,"

4. The designation "Junior Chamber,"

5. The designation "Jaycees," [9]

6. The designation "Jaycee,"

7. The designation "J.C.'s," and

8. The designation "J.C."

in referring to themselves or to the activities in which they engage or in the services they perform.

It is hereby further ordered that immediately upon the entry of this order, defendants San Francisco Junior Chamber of Commerce and San Francisco Junior Chamber of Commerce Charitable Foundation and each of them are permanently enjoined from representing or asserting that they are affiliated or connected in any way with plaintiffs, or either of them.

It is hereby further ordered that each party shall bear its own costs.

---

**9.** Defendant SFJCC has already agreed to an injunction against its continued use of the designation "Jaycees."